UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TYSHION DAVANTAE ALSTON, )<br>)<br>Defendant. ) | Case No. 1:23 CR 11 SNLJ (ACL) |

**REPORT AND RECOMMENDATION
BY UNITED STATES MAGISTRATE JUDGE**

Currently before the Court is Defendant Tyshion Davantae Alston's Motion to Dismiss Indictment.[1] (Doc. 30.) The Government opposes the Motion. (Doc. 32.)

I.   Background

Defendant Tyshion Alston was indicted on one count of possession of a firearm by an unlawful controlled substance user, in violation of 18 U.S.C. § 922(g)(3). Following the execution of a search warrant at Alston's brother's home, a loaded Draco 7.62 x 39 mm (an AK style pistol) with a 40 round magazine was seized along with more than 300 grams of marijuana, a money counting machine, several digital scales with marijuana residue, and $6,850 in cash. Five days later, Alston voluntarily spoke with officers and indicated that the Draco pistol belonged to him and that he had owned it for about two years, having purchased it from a licensed dealer. Alston explained he often stayed at his brother's residence and had

---

[1] Pretrial matters have been referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

hidden it under a sofa cushion the night before the search warrant was executed. When asked exactly where he had left the pistol, Alston responded he could not remember as he had been smoking marijuana at the time. He added that he smokes marijuana regularly, that being "every day, several times a day." (Doc. 32-1 at 2.) Alston now moves to dismiss the Indictment. (Doc. 30.)

    II.    The Motion

Alston first raises a facial challenge to the constitutionality of § 922(g)(3), arguing that the Supreme Court's decision in *New York Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), renders that statute incompatible with the Second Amendment right to bear arms. (Doc. 30 at 1-10.) In the event the statute is constitutional, Alston "maintains a separate as-applied challenge out of an abundance of caution." *Id.* at 10–12.

The Government opposes Alston's first ground for dismissal arguing that Alston's conduct as an unlawful user of a controlled substance while possessing a firearm is not covered by the Second Amendment. It then argues that Alston is not a member of "the people" protected by the Second Amendment and that Eighth Circuit case law excludes unlawful users of controlled substances from the Second Amendment as they are not "virtuous citizens." The Government further provides a detailed assessment of how § 922(g)(3) is analogous to historical prohibitions on drunken possession of firearms. It further argues that prohibiting 1) those impaired by drugs, 2) felons, and 3) the mentally ill from possessing firearms is consistent with the history of the Second Amendment. Finally, the Government opposes Alston's second ground for dismissal arguing facts, that were unopposed by Alston, to show that Alston purchased and possessed the Draco pistol unlawfully. That said, the undersigned makes no factual findings as a part of this Report and Recommendation.

Based on the analysis below, it is recommended that Alston's request for dismissal of the Indictment as 1) facially unconstitutional be denied and his 2) vague as-applied challenge be held in abeyance until trial.

III.     Legal Analysis

*A. Framework for Analyzing Second Amendment Challenges*

The Second Amendment states, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

In *District of Columbia v. Heller*, the Supreme Court decided whether a law of the District of Columbia—which banned all handguns and required long-arms to be kept in an inoperable state within the home—impermissibly infringed on the right to keep and bear arms. 554 U.S. 570, 573 (2008). The Court held that the Second Amendment protects the "individual right to possess a firearm . . . and to use that arm for traditionally lawful purposes . . . ." *Id.* at 577. But like most rights in the Constitution, "the right secured by the Second Amendment is not unlimited." *Id.* at 626. *Heller* recognized that this Amendment "conferred an individual right to keep and bear arms." *Id*. at 595. After recognizing the individual right at the heart of the Second Amendment, the Court struck down the challenged law of the District of Columbia, finding that it deprived Heller of his individual right to keep a handgun at home for self-defense. *Id.* at 636.

In *McDonald v. City of Chicago*, the Court held "that the Due Process clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*." 561 U.S. 742 at 791 (majority opinion) (2010). The Court emphasized that while *Heller* struck "down a law that prohibited the possession of handguns in the home," it "recognized that the

right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner and for whatever purpose." *Id*. at 786 (quoting *Heller*, 554 U.S. at 626).  *McDonald* reiterated that the holding in *Heller* "did not cast doubt" on "longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of firearms.'" *Id.* (quoting *Heller*, 554 U.S. at 626–27).  In so doing, the Court struck down Chicago's municipal code that, much like D.C. in *Heller*, effectively banned handgun possession by almost all city residents.  *Id.* at 750.

In *Bruen*, the Court considered whether New York's state licensing law, which allowed an applicant to obtain a license to carry a firearm outside the home only by proving that "proper cause exists," 142 S. Ct. at 2123, deprived two "law-abiding, adult citizens," *id.* at 2125, of their right to carry a handgun for self-defense outside the home.  New York courts interpreted "proper cause" to mean that an applicant must show a "special need for self-protection distinguishable from that of the general community." *Id.* (quoting *In re Klenosky*, 428 N.Y.S.2d 256, 257 (N.Y. App. Div. 1980)). This was a "demanding" standard that gave licensing officers great discretion in deciding who could exercise constitutional rights, in contrast to "shall issue" jurisdictions "where authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." *Id.*

*Bruen* explained that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must justify its regulation by demonstrating that it is consistent with this Nation's historical

Page 4 of 12

tradition of firearm regulation." *Id.* at 2129–30. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961)). *Bruen* "decided[d] nothing about *who* may lawfully possess a firearm." *Id.* at 2157 (Alito, J., concurring) (emphasis added).

The Supreme Court's holdings in *Bruen*, did not overturn *Heller* wherein the Court recognized the importance of "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 627 (citations omitted). *Bruen*, *Heller*, and *McDonald* dealt with "how and why the regulations [at issue] burden a law-abiding citizen's right to armed self-defense." *Bruen*, 142 S.Ct. at 2133. Notably, the petitioners and respondents in *Bruen* agreed that just as *Heller* and *McDonald* recognized "that the Second and Fourteenth Amendments protect the right of *an ordinary, law-abiding citizen* to possess a handgun in the home for self-defense[,]" such individuals "have a similar right to carry handguns publicly for their self-defense." *Id*. at 2122 (emphasis added.)

The Eighth Circuit engaged in a thorough discussion of how *Bruen* should be applied when there is a facial challenge to a regulation under the Second Amendment in *United States v. Sitladeen*, 64 F.4th 978 (8th Cir. 2023). The *Sitladeen* panel observed that "*Bruen* does not address the meaning of 'the people,' much less the constitutionality of criminal firearm statutes like § 922(g)(5)," *id*. at 984, which prohibits any alien who is unlawfully present in the United States from possessing a firearm. *Sitladeen* noted that *Bruen* "clarified how a court must assess a Second Amendment challenge in general," *id*., as follows:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the

> government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with the Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Bruen*, 142 S.Ct. at 2126 (internal quotation marks omitted). *Sitladeen* then commented that *Bruen* repudiates means-end scrutiny employed by our sister circuits. 64 F.4th at 984 (referencing *United States v. Perez*, 6 F.4th 448, 453 (2d Cir. 2021), *cert. denied*, 142 S.Ct. 1133 (2022); *United States v. Torres*, 911 F.3rd 1253, 1257 (9th 2019); *United States v. Huirton-Guizar*, 678 F.3d 1164, 1169 (10th Cir. 2012).

"Following *Bruen*, instead of analyzing 'how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right,' a court must begin by asking *whether the firearm regulation at issue governs conduct that falls within the plain text of the Second Amendment*." *Id*. at 985 (quoting *Bruen*, 142 S.Ct. at 2126) (emphasis added). *Sitladeen* examined this question:

> If the regulation does govern such conduct, the court will uphold it so long as the government can "identify an American tradition justifying" the regulation. *Id*. at 2138. For the government to make this showing, it need not point to a "historical *twin*," but only an analogous, i.e., "relevantly similar," historical regulation that imposed "a comparable burden on the right of armed self-defense" and that was "comparably justified." *Id*. at 2132-33. Nevertheless, *Bruen* cautions that "not all history is created equal." *Id*. at 2136. Because "[c]onstitutional rights are enshrined with the scope they were understood to have *when the people adopted them*," regulations in effect at or near the time of the Second Amendment's ratification carry more weight in the analysis than those that existed long before or after that period. *Id*.

*Id*. (quoting *Bruen* as cited and emphasis added in original).

To assess a facial challenge to a regulation under the Second Amendment, the first question is "whether [the statute] governs conduct that falls within the plain text of the Second Amendment." *Id*. (quoting *Bruen*, 142 S.Ct. at 2126). *Sitladeen* instructs that "[o]nly if the answer is yes do we proceed to ask whether [the statute] fits within America's historical tradition of firearm regulation.[ ]" *Sitladeen*, 64 F.4th at 985 (quoting *Bruen* 142 S.Ct. at 2126).

Shortly after *Heller* and *McDonald* were decided, the Eighth Circuit definitively held that 18 U.S.C. § 922(g)(3) was constitutionally valid in that "§ 922(g)(3) is the type of 'longstanding prohibition[ ] on the possession of firearms' that *Heller* declared presumptively lawful." *Seay v. United States*, 620 F.3d 919, 925 (8th Cir. 2010) (quoting *Heller*, 554 U.S. at 626). *Seay* also concluded that Congress, in passing § 922(g)(3), "expressed its intention to 'keep firearms out of the possession of drug abusers, a dangerous class of individuals.'" *Id*. (quoting *United States v. Cheeseman*, 600 F.3d 270, 280 (3d Cir. 2010)). The Eighth Circuit surveyed other courts that had considered the constitutionality of § 922(g)(3) under the Second Amendment and upheld it. *Id*. at 924-25. It also found that "§ 922(g)(3) has the same historical pedigree as other portions of § 922(g)(3) which are repeatedly upheld by numerous courts since *Heller*." *Id*. at 925. Ultimately, *Seay* held that "§ 922(g)(3) is the type of 'longstanding prohibition[ ] on the possession of firearms' that *Heller* declared presumptively lawful." *Id*. (alteration in original) (quoting *Heller*, 554 U.S. at 626). *See also United States v. Walker*, No. 8:22-CR-291, 2023 WL 3932224, at *4 (D.Neb., Jun. 9, 2023) (district court denied facial challenge to § 922(g)(3) under the Second Amendment and held in abeyance as-applied void-for-vagueness challenges to § 922(g)(3) under the Second Amendment).

In *United States v. Bena*, the Eighth Circuit recognized that *Heller* did not articulate the "analytical basis for the presumptive constitutionality" for prohibitions on firearm possession.

664 F.3d 1180, 1182 (8th Cir. 2011) That said, it commented, "but we know at least that 'statutory prohibitions on the possession of weapons by some persons are proper,' and 'exclusions need not mirror limits that were on the books in 1791.'" *Id*. (quoting 664 F.3d 1180, 1182-84 (7th Cir. 2010). *Bena* then discussed the Nation's history relative to "the concept of a right to arms" dating back to "[p]roposals from the Founding period." *Id*. at 1182-84.

While the Government cited *Seay* as binding case law. Alston, like many across the country, argues that *Seay* does not survive *Bruen*. (Doc. 30 at 3-4.) To the contrary, *Bruen* did not disturb the validity of *Heller* and *McDonald* which guided the decision in *Seay*. In *United States v. Jackson*, the Eighth Circuit explained that the *Bruen* decision did not cast doubt on *Heller*'s and *McDonald*'s statements that longstanding prohibitions on possession of firearms by certain persons, such as by felons, are presumptively valid. 69 F.4th 495, 501–02 (8th Cir. 2023). *Jackson* confirmed that this Nation's history shows Congress has the authority to "prohibit possession of firearms by persons who have demonstrated disrespect for legal norms of society," and who are not law-abiding citizens. *Id.* at 504 (upholding constitutionality of statute prohibiting felons from possessing firearms, 18 U.S.C. § 922(g)(1)). Congress, in passing the Omnibus Crime Control and Safe Streets Act of 1968, prohibited "categories of presumptively dangerous persons from transporting or receiving firearms," and that determination was "not unreasonable." *Id.* at 504–05 (citations omitted). "[L]egislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms" regardless of whether "those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness." *Id.* at 505–06. Indeed, the Omnibus Crime Control Act, including §

Page **8** of **12**

922(g)(3), was partially aimed at preventing "narcotics addicts" from possessing firearms. *See id.* at 504 (quoting Pub. L. No. 90-351, § 901(a)(1), (2), 82 Stat. 225, 225).

The conclusory paragraph by the *Bruen* majority "repeated that the right to keep and bear arms belonged to 'law-abiding citizens with ordinary self-defense needs.'" *Bruen*, 142 S.Ct. at 2156. Similarly, Justice Kavanaugh in his concurring opinion reiterated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." *Id.* at 2162 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 626) (alteration in original). Thus, *Bruen* should not be seen as overruling or even upsetting the holdings and reasoning of *Heller* and *McDonald*, but instead "charts the same course" as those earlier precedents. *Id.* at 2131–32.

According to *Seay*, the conduct regulated by § 922(g)(3) was not protected by the plain text of the Second Amendment. "[T]he Eighth Circuit in *Seay* properly applied the 'test that [the Supreme Court] set forth in *Heller*,' which the Supreme Court also employed in *Bruen*." *Walker*, 2023 WL 393 2224, at *4 (quoting *Bruen*, 142 S.Ct. at 2131).

Absent the Eighth Circuit itself finding that *Bruen* overturned its holding in *Seay*, this Court must treat *Seay* as binding precedent. *Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003). Additionally, "when the Supreme Court issues an opinion with reasoning that appears to undercut an earlier decision, lower courts must continue to apply the earlier ruling in factual contexts analogous to the earlier case until such time that the Supreme Court itself overturns the earlier case." *United States v. Cavanaugh*, 643 F.3d 592, 606 (8th Cir. 2011). Thus, Alston's facial challenge to the constitutionality of § 922(g)(3) should be denied. *See also Gilpin v. United States*, No. 22-04158-CV-C-RK-P, 2023 WL 387049, at *4 (W.D. Mo.

Jan. 3, 2023) (rejecting a post-*Bruen* challenge to § 922(g)(3), finding that *Bruen* did not overturn binding precedent in *Seay*).

B.  *As-Applied Challenge*

Next, out of an abundance of caution, Alston argues that § 922(g)(3) is unconstitutionally vague as applied to him.  He asserts that "a facial and as-applied challenge to § 922(g)(3) are effectively one and the same under *Bruen*." (Doc. 30 at 10, citing *United States v. Rahimi*, ___ F.4th ___, 2023 WL 1459240, at *4 (5th Cir. 2023)).  *Rahimi* granted a facial challenge to § 922(g)(8), which criminalizes the possession of firearms by people subject to a domestic violence restraining order.  It held that § 922(g)(8) fails the history and tradition test in *Bruen* and thus violates the Second Amendment.  The Supreme Court granted certiorari in *Rahimi* on June 30, 2023.  *United States v. Rahimi*, 143 S.Ct. 2688 (2023).

"A criminal statute is unconstitutionally vague in violation of the Fifth Amendment due process clause if it 'fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement.'" *United States v. Turner*, 842 F.3d 602 (8th Cir. 2016) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)).  For Alston to prevail on his claim that § 922(g)(3) is unconstitutionally vague, he must "show that the statute is vague as applied to **his** particular conduct," not that the statute is vague as applied to the conduct of others.  *Bramer*, 832 F.3d 908, 909 (8th Cir. 2016) (citing *United States v. Cook*, 782 F.3d 983, 987 (8th Cir. 2015)) (emphasis in original). "The phrase 'unlawful user of . . . any controlled substance' in 18 U.S.C. § 922(g)(3) is not defined by statute and 'runs the risk of being unconstitutionally vague without a judicially-created temporal nexus between the gun possession and *regular drug use*.'" *Turner*, 842 F.3d at 605 (quoting *United States v. Turnbull*, 349 F.3d 558, 561 (8th Cir. 2003)) (emphasis in original).  *But see United States v. Daniels*,

\_\_\_ F.4th \_\_\_, No. 22-60596, 2023 WL 5091317 (5th Cir. Aug. 9, 2023) (The Fifth Circuit Court of Appeals granted a defendant's as-applied challenge to § 922(g)(3) finding that the statute failed the history and tradition standard in *Bruen*.)

To rule on Alston's drug use, the motion court must first determine whether he had engaged in "'regular drug use' at the time he possessed the firearm." *Turner*, 842 F.3d at 605. "Regular use" does not mean "actual use" at the time Alston admitted possession of the firearm, but simply that he used unlawful controlled substances during the period of time he possessed the firearm. *United States v. Carnes*, 22 F.4th 743, 748 (8th Cir. 2022) (quoting *United States v. Rodriguez*, 711 F.3d 928, 937 (8th Cir. 2013)). But any such finding would require examining the "facts surrounding the commission of the alleged offense," which means the contested defense can only be ruled on with a "trial on the merits." *Id.* (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)).

Though mentioned by neither party, *Turner* held that Federal Rule of Criminal Procedure 12(b) and (d) prohibits the undersigned from ruling on the merits of this motion because that would require making factual findings of an issue that is bound up with the evidence about the alleged offense itself: whether Alston was a regular drug user at the time he possessed the firearm. *See id.* at 605 (quoting *United States v. Grimmett*, 150 F.3d 958, 962 (8th Cir. 1998)). Indeed, Alston argues facts related to his possession of the Draco pistol to resolve the Motion. In fact, both parties presented facts related to this question.

Pretrial motions should be ruled on unless there is "good cause to defer a ruling." Fed.R.Crim.P. 12(d). "Good cause exists and a decision should be deferred if disposing of the pretrial motion requires making factual determinations that 'fall[ ] within the province of the ultimate finder of fact.'" *Turner*, 842 F.3d at 605 (citations omitted).

Alston's as-applied challenge must await presentation of evidence at trial. Until that time, this Court's ruling on the issue should be held in abeyance.

IV.   Conclusion

Presently, Alston's facial attack on the constitutionality of 18 U.S.C. § 922(g)(3) is foreclosed by Supreme Court and Eighth Circuit precedent. His as-applied challenge should be deferred until trial because it requires fact-finding left to the province of a jury.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Alston's Motion to Dismiss the Indictment (Doc. 30) as facially unconstitutional be **denied** and his as-applied challenge be **held in abeyance** until trial.

Further, the parties are advised that they have until not later than September 11, 2023, in which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained. Failure to file timely objections may result in a waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this 26th day of August, 2023.

s/*Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE